IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  4:19 CR 211 RLW (NAB) |
| v. | ) | |
| | ) | |
| JERRY STREETER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT STREETER'S
MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

Defendant Streeter has filed a motion to suppress statements made by the Defendant to law enforcement and to suppress any evidence seized at the time of Defendant's arrest on March 19, 2019. For the reasons stated herein, Defendant's motion(s) should be denied.

**INTRODUCTION**

Defendant Jerry Streeter is charged in a multi-defendant, multi-count indictment with conspiracy to distribute and possess with intent to distribute in excess of 400 grams of fentanyl, in violation of Title 21, United States Code, Sections 841 and 846; two counts of possession of a firearm in furtherance of drug trafficking, in violation of Title 18, United States Code, Section 924(c); and with possession with intent to distribute marihuana, in violation of Title 21, United States Code, Section 841(a)(1). When the indictment was returned by the Grand Jury, an arrest warrant issued for Defendant. That warrant was executed when Defendant was arrested at his residence on March 19, 2019. During his arrest, Defendant made various statements - both spontaneous and post-*Miranda*. Law enforcement conducted a protective sweep of Defendant's residence and discovered in plain view a large amount of marihuana in a toilet bowl, firearms

1

and ammunition. The marihuana, firearms and ammunition were seized. Defendant now seeks to suppress his statements and the evidence seized during his arrest.

## STATEMENT OF FACTS[1]

An arrest warrant was issued for Defendant by the District Court for the Eastern District of Missouri, following Defendant's indictment by a Grand Jury. The warrant was issued on March 15, 2019 in Cause Number 4:19CR00211 RLW/NAB. Law enforcement, which included the Drug Enforcement Administration, United States Marshals Service and the St. Louis County Police, went to a house at 1416 Farmview, which was located in St. Louis County. The arrest team had reason to believe that 1416 Farmview was the Defendant's residence and they had reason to believe Defendant would be found within the residence on March 19, 2019. The residence was a single-family home.

The arrest team approached the house, knocked repeatedly and announced loudly "Police!" Although members of the arrest team could hear noises coming from within the house, no one responded to the front door. The arrest team forced entry through the front door and once inside, again announced their presence by loudly stating "Police!" Defendant then appeared, wearing underwear and a t-shirt. Defendant was ordered out of the residence for officer safety and handcuffed. Once Defendant was safely arrested, the arrest team conducted a protective sweep of the house. During the limited search, a large amount of marihuana was found stuffed

---

[1] The United States expects that the facts set forth would be offered should an evidentiary hearing be held on the suppression issue. However, this memorandum is not offered as a comprehensive statement of the Unites States' case. Instead, the purpose of this memorandum is to provide the Court with an outline of the United States' evidence that would likely be presented at the evidentiary hearing. This memorandum is also intended to serve as a guide for the Court and is not intended to be in the nature of a Bill of Particulars that would fix and/or bind the United States to a set theory of proof. In addition, the Defendant has chosen not to submit a statement of facts or a legal memorandum in support of his motion. He instead has deferred until an evidentiary hearing has been held.

into a toilet bowl. It was seized and transported to the crime lab to be dried, weighed and analyzed. Defendant admitted to having firearms in the house. Law enforcement found two guns in a bedroom basement, where it appeared Defendant slept. The guns were in plain view, along with ammunition, magazines and a gun box containing gun-related items. These items were seized and transported to the crime lab for analysis and/or to be logged into evidence. Police also retrieved some clothing so Defendant could get dressed. During the entire encounter with Defendant, he was belligerent, agitated and spoke in an angry and threatening manner to law enforcement. After Defendant asked why he was being arrested and upon learning the answer, Defendant reacted by threatening the Judge who issued the warrant for Defendant's arrest. He also invited law enforcement to fight him, making statements such as: "Fuck that judge and fuck you! Take these cuffs off and I'll fuck you up and I'll fuck that judge up when I get in front of him!"

When Defendant was advised that he had been charged in a fentanyl conspiracy, he made a spontaneous statement in the presence of members of the arrest team that he did not sell fentanyl, only marihuana. Defendant was escorted to a police vehicle where he was read his *Miranda* warnings. Defendant acknowledged that he understood his rights and agreed to answer questions. Detective Walsh from the St. Louis County Chief of Police's Intelligence Unit questioned Defendant while they sat in the police vehicle. Detective Walsh asked Defendant about the firearms found in the residence. Defendant admitted that the guns were his and that he had bought them "clean." Defendant also made the following statement in response to being asked why he possessed the guns:

"I ain't getting robbed by nobody when I'm out here doing my thing selling. I been shot at a bunch and never hit. They try and rob me or blast me, I steady thumping back at them. I gotta protect myself." "Because they know what I be doing. I just got into a shootout on Christmas Eve this year. Mother fuckers started shooting at me so I started shooting back at them through our

3

windshield. I don't think I hit anyone." "Hell I been in a bunch of shootings and I ain't never hit nobody. I just shoot back to scare them away."

Defendant was eventually transported by the United States Marshals Service for processing and to make his initial appearance before the Court. The following items were seized, packaged and transported to property control/crime lab at the St. Louis County Police Department:

Marihuana (found in toilet bowl)(crime lab confirmed it was 309.8 grams of marihuana, a Schedule I controlled substance);

Springfield XD .357 caliber handgun with a precision laser site attached, and an ammunition magazine with 12 rounds, with an additional round in the chamber, an extended magazine with 17 rounds, a loose round on the floor, a Glock .45 caliber magazine with 7 rounds and a Springfield gun box which contained a Springfield XD holster, grip, dual magazine holster and a Bar-Sto .40 caliber Smith &Wesson barrel (found in the basement bedroom on the floor by the bed);

Bill of sale for a 10mm firearm (basement floor);

A Zastava model PAP M92 PV, 7.62 caliber AK-47 style pistol, with a metal magazine containing 29 rounds plus a round in the chamber (found propped up in the door jam of a closet in the basement bedroom).

## ARGUMENT

**Motion to Suppress Evidence**

[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971). One of those long-standing exceptions is the plain view doctrine. *Id.; United States v. Evans*, 830 F.3d 761, 765 (8th Cir. 2016). The plain view doctrine permits the warrantless seizure of evidence if the officers "are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object. *Id.,* quoting *United States v. Brown*, 633 F.3d 656,

4

661 (8th Cir. 2010).  The question then becomes whether or not law enforcement were lawfully present in Defendant's home on March 19, 2019 and whether or not they had a lawful right of access to the items specified above.

For Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within. *Payton v. New York,* 445 U.S. 573, 603 (1980); *United States v. Risse,* 83 F.3d 212, 215-16 (8th Cir. 1996). The officer must have a reasonable belief that the suspect resides at the place to be entered and have reason to believe that the suspect is present at the time the warrant is executed. *Id.* The officers' assessment need not in fact be correct; rather, they need only "reasonably believe" that the suspect resides at the dwelling to be searched and is currently present at the dwelling. *Id.* So long as the person named in the warrant possesses common authority over, or has some other significant relationship to the residence, the home entered by police can certainly be considered that person's 'home' for Fourth Amendment purposes, even if the premises are owned by a third party and others are living there, and even if the person concurrently maintains an additional residence elsewhere. *United States v. Steagald*, 451 U.S. 204, 230-31 (1981); *Risse,* supra at 217.

In the instant cause and as a result of a Grand Jury indictment of Defendant Streeter and others, a lawful warrant was issued for Defendant's arrest. That warrant was issued based upon the probable cause finding by a Grand Jury that Defendant conspired with others to distribute fentanyl and possessed a firearm in furtherance of that drug trafficking crime. A "fugitive" investigation was instituted, as part of a coordinated effort to arrest Defendant and the others named in the indictment in Cause Number 4:19CR00211 RLW/NAB. The St. Louis County Police Intelligence Division, in coordination with the United States Marshals Service, conducted

5

their fugitive apprehension investigation utilizing various information sources. For example, they checked Department of Revenue records, police report systems, REJIS, social media, previous contacts and utilities. The investigation also included searching these various records sources of close family, friends and associates of Defendant. As a result of their investigation, the arrest team had reason to believe that Defendant was residing at 1416 Farmview, in north St. Louis County. In anticipation of making an arrest attempt (along with simultaneous arrest attempts of the other defendants), the team assigned to apprehend Defendant Streeter had reason to believe that Defendant would be present in the house at 1416 Farmview on the morning of March 19, 2019. Their entry to execute the valid arrest warrant was therefore lawful.

Once they made entry into the house and apprehended Defendant, a limited, protective sweep was conducted where obviously incriminating evidence was seen in plain view and seized. A 'protective sweep' is a quick and limited search of a premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding. *United States v. Alatorre*, 863 F.3d 810, 813 (8th Cir. 2017), quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990). The Fourth Amendment permits the protective sweep if the searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others. *Id.* When members of the arrest repeatedly knocked and announced loudly "Police!" there was no response, although officers could hear noises coming from within the house. They therefore forced entry and then discovered the Defendant was in fact home. Not knowing if anyone else was inside the house who could pose a danger to the officers, the arrest team did a cursory, protective sweep of the house. It was during

6

this lawful sweep that incriminating evidence was discovered in plain view. The subsequent seizure of evidence in plain view was therefore valid. *Risse,* supra at 217; *U.S. v. Spotted Elk*, 548 F.3d 641, 652 (8th Cir. 2008); *United States v. Chipps*, 410 F.3d 438, 442-43 (8th Cir. 2005); *United States v. Arcobasso*, 882 F.2d 1304, 1307 (8th Cir. 1989)( Police officers may seize obviously incriminating items that are in plain view).

The Defendant's motion to suppress evidence should therefore be denied.

**Motion to Suppress Statements**

When the arrest team encountered Defendant in his home, he was dressed in his underwear and a t-shirt. He was immediately handcuffed and patted down. He was removed from the home while the team conducted its protective sweep. It was during this time that Defendant made various, spontaneous utterances. Defendant was under arrest but was not being questioned by law enforcement, when he spontaneously uttered that he did not sell fentanyl, only marihuana. When a suspect makes spontaneous admissions, not in response to questioning by law enforcement, he does so at his own peril. *Miranda* warnings are only required preceding the custodial interrogation of a suspect. In the instant case, although Defendant had been placed under arrest, law enforcement had not begun to question him and therefore had not read any *Miranda* warnings. When an individual makes a spontaneous statement to law enforcement, that is not preceded by an interrogation or questioning, *Miranda* does not apply.

*Miranda* warnings must be given before a suspect's statements made during custodial interrogation may be admitted into evidence. *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.E.2d 694 (1966). Interrogation includes not only express questioning by an officer, but also any words or actions that "police should know are reasonably likely to elicit an incriminating response from the suspect." *Holman v. Kemna,* 212 F.3d 413, 417 (8th Cir.2000)

7

*citing Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In particular, asking a routine booking question is not interrogation under *Miranda*. *See, e.g., Pennsylvania v. Muniz* 496 U.S. 582, 601, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (plurality opinion); *United States v. Brown,* 101 F.3d 1272, 1274 (8th Cir.1996); *United States v. Horton,* 873 F.2d 180, 181 n. 2 (8th Cir.1989); *United States v. McLaughlin,* 777 F.2d 388, 391–92 (8th Cir.1985). Likewise, *Miranda* does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer. *United States v. Hawkins,* 102 F.3d 973, 975 (8th Cir.1996), *cert. denied,* 520 U.S. 1179, 117 S.Ct. 1456, 137 L.Ed.2d 560 (1997); *United States v. Chipps,* 410 F.3rd 438, 445 (8th Cir. 2005).

After Defendant was moved to a police vehicle, Detective Walsh did read the *Miranda* warnings to Defendant. After remarking that "I didn't do shit.!" Defendant acknowledged that he understood his rights and agreed to answer questions. No threats or promises were made to Defendant and no coercion was used to get Defendant to waive his right to remain silent. Defendant is an adult who was not obviously intoxicated, impaired or under the influence. Defendant also had had prior experience in the criminal justice system and was therefore knowledgeable about his legal rights.

It was during this post-*Miranda* contact when Defendant was asked about the marihuana found in the toilet and the guns found in the basement bedroom. In response to questioning, Defendant admitted that the guns were his and the he believed that he possessed them legally. Defendant also admitted that he had fired his weapon in self-defense. Because he felt threatened by others, he always possessed his gun(s) for protection. When asked about the marihuana (that he was obviously trying to flush down the toilet), Defendant demurred by laughing and shrugging his shoulders. The United States Supreme Court in *Miranda v. Arizona,*

8

384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694 (1966), held that the United States is prohibited from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his Fifth Amendment privilege against self-incrimination and right to an attorney. A waiver of the Fifth Amendment privilege against self-incrimination is valid if the waiver is made voluntarily, knowingly, and intelligently. *Id.* at 444; *see United States v. Ingram,* 839 F.2d 1327, 1329 (8th Cir. 1988) (holding waiver voluntary, knowing, and intelligent where "defendant was informed of his rights, stated that he understood them, and then chose to speak to the officers"). "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Williams v. Norris*, 576 F.3d 850, 868 (8th Cir. 2009).

All of these statements are admissible and Defendants motion to suppress should be denied.

## CONCLUSION

Based upon the foregoing, the United States submits that Defendant has not posited any legal or factual basis in support of his joint motion to suppress evidence and statements. Those motions should therefore be denied.

    Respectfully submitted,

    SAYLER A. FLEMING
    UNITED STATES ATTORNEY

    /s/ *Paul J. D'Agrosa*
    PAUL J. D'AGROSA (#36966MO)
    Assistant United States Attorney
    111 S. 10th Street, 20th Floor
    St. Louis, MO  63102

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January, 2021, I filed the foregoing electronically with the Clerk of the Court to be served by way of the Court's electronic filing system upon Wil Goldstein, attorney for Jerry Streeter.

*/s/ Paul J. D'Agrosa*