**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19 CR 211 RLW/NAB |
| ) | |
| JERRY O. STREETER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).  Currently pending before the Court is Defendant Jerry Streeter's Motion to Suppress Evidence and Statements.  (Doc. 583.)  The United States filed a response to Defendant's motion.  (Doc. 589.)

**I.     BACKGROUND**

Defendant Jerry Streeter is one of 17 defendants charged in a 23-count superseding indictment. (Doc. 445.)  Streeter is charged in four counts.  In Count One he is charged with conspiracy to distribute and possess with intent to distribute 400 grams or more of fentanyl in violation of Title 21 United States Code Section 841(a)(1); in Count Five he is charged with discharge of a firearm in furtherance of a drug trafficking crime in violation of Title 18 United States Code Sections 2 and 924(c)(1)(A);  in Count Eighteen he is charged with possession with intent to distribute marihuana in violation of Title 21 United States Code Section 841(a)(1); and in Count Nineteen he is charged with discharge of a firearm in furtherance of a drug trafficking crime in violation of Title 18 United States Code Sections 2 and 924(c)(1). (Doc. 445.)

Streeter seeks to suppress statements made and evidence seized during his arrest and a protective sweep of his premises. On June 23, 2021, the undersigned held an evidentiary hearing. Streeter appeared in person and was represented by William Goldstein; the Government was represented by Paul D'Agrosa. At the evidentiary hearing, the United States offered testimony of St. Louis County Police Detective Kevin Walsh ("Det. Walsh").

Following the hearing, a transcript was prepared and both parties filed post hearing briefing. Briefing was completed on August 25, 2021. As such, Streeter's pretrial motion is now fully briefed and ready for a ruling. Based on the evidence adduced at the evidentiary hearing and the written submissions of the parties, I make the following findings of fact and conclusions of law.

## II.   FACTUAL FINDINGS

Kevin Walsh is a detective with the St. Louis County Police Department. At the time of the hearing, he had been with the department for eight years. In March 2019, he was a part of the Criminal Intelligence Unit. Det. Walsh's testimony at the evidentiary hearing was supported by the documentary evidence presented at the hearing. Based on my observations of Det. Walsh at the evidentiary hearing, I found him to be a credible and reliable witness.

Det. Walsh was involved in an investigation of Jerry Streeter with regards to narcotics trafficking in March 2019. Streeter and thirteen other defendants were indicted by a grand jury on March 14, 2019. (Doc. 2.) On March 15, 2019,[1] a warrant was issued for Streeter's arrest and on March 19, 2019, an arrest team was assembled to take Streeter into custody. Det. Walsh was a

---

[1] Det. Walsh testified that the arrest warrant was issued on March 20, 2019, however the Court docket sheet reflects that the warrant was issued on March 15, 2019. (Doc. 59.) The undersigned will take judicial notice of the date reflected on the docket.

member of the team which was comprised of the St. Louis County Intelligence Unit, the County Anti-Gang Unit, the DEA and the U.S. Marshals.

On the morning of the arrest, the U.S. Marshals approached Streeter's residence at 1416 Farmview in St. Louis County, they knocked on the door and announced their presence.  They heard noises, but no one answered the door.  The Marshals then used a battering ram to force entry into the house.  When Det. Walsh entered the house, Streeter was in handcuffs in the living room of the house.  Det. Walsh told Streeter he was being arrested for distribution of fentanyl, to which Streeter replied that he didn't distribute fentanyl; he only distributed a small amount of marijuana.

Officers next conducted a protective sweep of the residence.  Det. Walsh stated that the sweep was conducted for officer safety, for Streeter's safety, and because officers were looking for other individuals Streeter was known to associate with.  Officers were not aware of who else was in the house at that time.  Det. Walsh participated in the protective sweep which involved members of the arrest team searching room-by-room for individuals who may be located in the residence.  When Det. Walsh looked into a bathroom, he found a large amount of marijuana in a toilet bowl and on the floor of the bathroom.  In addition, Det. Walsh found a handgun in the basement bedroom next to the bed.  He also opened a closet door in the basement and found an AK-47 style pistol against the door jamb. Both weapons were seized, and both were loaded with ammunition.  It appeared to the detective that the bedroom was Streeter's because his clothing and photos were located in the bedroom. No other individuals were found in the house. The firearms were seized from the residence and taken to the lab.  The marijuana was also seized, then dried, tested, and weighed at the county Police Lab.

After the protective sweep was conducted, Streeter was taken to a vehicle and Det. Walsh read him his *Miranda* rights.  After informing Streeter of his rights, Det. Walsh questioned Streeter

about the firearms and drugs found in the house. Streeter told Det. Walsh that he sells marijuana and that the firearms are used as protection related to his drug dealing.

### III. LEGAL ANALYSIS

#### a. Protective Sweep

Streeter contends that the protective sweep of his residence following his arrest was an unlawful search and therefore any evidence seized during the sweep should be suppressed. The Fourth Amendment holds inviolate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted).

One such exception is the "protective sweep." *United States v. Alatorre*, 863 F.3d 810, 813 (8th Cir. 2017). "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id.* at 813 (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)). "The government bears the burden of proving that [the protective sweep] exception to the search warrant requirement applies." *United States v. Green*, 560 F.3d 853, 856 (8th Cir. 2009).

"The Fourth Amendment permits 'the protective sweep ... if the searching officer possesse[d] a *reasonable belief* based on *specific and articulable facts* which, taken together with the *rational inferences* from those facts, reasonably warrant[ed] the officer in believing that the

4

area swept harbored an individual posing a danger to the officer or others." *Alatorre*, 863 F.3d at 813 (citing *Buie*, 494 U.S. at 327 (alterations in original) (internal quotation marks omitted)).

In *Buie,* the Supreme Court established a two-prong test for determining whether a protective sweep incident to an arrest was constitutionally permissible. First, the *Buie* Court held "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." 494 U.S. at 334, 110 S.Ct. 1093. Second, the Court permitted a broader sweep "when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 337, 110 S.Ct. 1093. In either circumstance, a protective sweep "is not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger ...." *Id.* at 335–36, 110 S.Ct. 1093.

Streeter seeks to suppress the evidence seized during the protective sweep of the house. He contends that the protective sweep was an unlawful search because police lacked articulable facts, which taken together with rational inferences from those facts, would warrant a reasonably prudent officer believing that there was a dangerous individual inside the house. Streeter cites to *United States v. Waldner,* 425 F.3d. 514 (8th Cir. 2005), in support of his contention that the protective sweep was not justified. In *Waldner*, the police went to the defendant's home to serve an order of protection. *Id.* at 515. Waldner consented to allow officers to accompany him as he went to gather his clothing. *Id.* at 516. When Waldner was five to ten feet away from his home office, one of the officers entered the office and saw a rifle with an attached silencer. *Id.* Waldner was then indicted on two counts of unlawful possession of a firearm by a prohibited person. *Id.*

5

Waldner pled not guilty, and he later filed a motion to suppress the firearms and the statements made to the police about those firearms. At a suppression hearing, the magistrate recommended denial of Waldner's motion. Waldner filed objections, and the district court entered an order adopting the magistrate's report and recommendation denying Waldner's motion. *Id*. The Eighth Circuit Court of Appeals reversed the trial court's denial of the motion to suppress evidence. It held that the protective sweep exceeded its permissible scope because there was no evidence that the officers had any articulable facts that an unknown individual might be in the office. *Id.* at 517.

Unlike *Waldner*, the protective sweep here was conducted incident to Streeter's arrest. Under the first prong of *Buie*, the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. *Buie*, 494 U.S. at 334, 110 S.Ct. 1093. In addition, Det. Walsh did provide specific, articulable facts regarding the need for the broader protective sweep. The detective testified that there were other individuals that Streeter was known to associate with who could have been in the residence. Det. Walsh further explained that the protective sweep was conducted because of concerns that if someone was in the house, officers could be ambushed while taking the defendant into custody.

Based on the evidence presented at the hearing, I find that there were articulable facts to justify the protective sweep here: (1) Streeter did not immediately answer the door and officers heard noises before forcing entry; (2) Streeter had known accomplices who were also being sought for arrest; (3) if others were hiding in the house, they would pose a threat to the safety of officers and the public. Therefore, a reasonably prudent officer could believe there were dangerous individuals in the house. "A protective sweep may be executed after an arrest if there is a reasonable possibility that other persons may be present on the premises who pose a danger to the

6

officers." *United States v. Davis*, 471 F.3d 938, 944 (8th Cir. 2006) (citing *United States v. Jones*, 193 F.3d 948, 950 (8th Cir. 1999)).

### b. Motion to Suppress Statements

Streeter contends statements should be suppressed because they were "elicited by coercion and without the Defendant being afforded his rights under the Fifth Amendment of the United States Constitution and therefore the statements were involuntary and inadmissible." He also states that any statements made by the defendant were "elicited as a result of an illegal arrest and are therefore inadmissible." Lastly, Defendant contends that he "was subjected to a custodial interrogation wherein he purportedly made inculpatory statements, all in violation of the 5th Amendment to the United States Constitution." (Doc. 583.)

Streeter did not file a memorandum in support of the motion to suppress statements. Local Rule 4.01 states:

> **(A)** Unless otherwise directed by the Court, the moving party must file with each motion a memorandum in support of the motion, including any relevant argument and citations to any authorities on which the party relies.

Despite Defendant's failure to provide any argument or citations in a memorandum in support of the motion to suppress statements, I will address the allegations set forth in the motion. Streeter appears to be arguing that his statements were made while he was in custody and without being advised of his Fifth Amendment rights pursuant to *Miranda*. "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any

questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 1630, 16 L. Ed. 2d 694 (1966).

When Streeter was arrested, Det. Walsh told him he was charged in an indictment involving the distribution of fentanyl.  Streeter then replied that he didn't distribute fentanyl, only a small amount of marijuana. (Doc. 712, Tr. p. 13.)  The evidence here establishes that Streeter was not being interrogated when he made the statement regarding drug distribution. "Interrogation refers not only to express questioning but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Holman v. Kemna*, 212 F.3d 413, 418 (8th Cir. 2000) (citing *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). Interrogation must also reflect a measure of compulsion above and beyond that inherent in custody itself. *See Rhode Island,* 446 U.S. at 300, 100 S.Ct. 1682. Thus, not all statements made while in custody are the product of interrogation. *See United States v. Hatten,* 68 F.3d 257, 262 (8th Cir. 1995).  Streeter was in custody when he made the statement, but no interrogation was taking place.  Det. Walsh had merely informed him of the reason for his arrest.  It was at that point that Streeter volunteered that

8

he did not distribute fentanyl, only marijuana. Therefore, there was no violation of Streeter's Fifth Amendment rights against self-incrimination.

Streeter also made statements to Det. Walsh after *Miranda* warnings were read to him. After being moved from the house into a police vehicle, Det. Walsh gave Streeter his *Miranda* warnings. Streeter stated that he understood his rights and agreed to answer questions. (Tr. p. 20-21.) Det. Walsh then questioned him about the drugs and guns found in the house. Streeter stated that he had the firearms in his home for protection. He also admitted that he sold marijuana. (Tr. p. 22.) Det. Walsh stated that Streeter did not appear to be under the influence of drugs or alcohol during the questioning. A defendant may waive his *Miranda* rights and volunteer information, however, it must be a knowing and intelligent waiver of the defendant's right to remain silent. *U.S. v. Ingram*, 839 F.2d 1327, 1329 (8th Cir. 1988). "The question is not one of form, but rather turns on whether the totality of the circumstances reveals a voluntary, knowing, and intelligent waiver." *Id.*

The evidence adduced at the hearing was that Det. Walsh advised Defendant of his constitutional rights before he made the statements, and that the Defendant stated he understood those rights. The Eighth Circuit held in *Ingram*, that where "[t]he defendant was informed of his rights, stated that he understood them, and then chose to speak to the officers... we cannot say that the district court's finding that the defendant had waived his right to remain silent was clearly erroneous." *Id.* at 1329. Under these circumstances the Court finds that the statements were a voluntary waiver of Streeter's right to remain silent, and therefore are admissible.

### IV. CONCLUSION AND RECOMMENDATION

For the foregoing reasons,

9

**IT IS HEREBY RECOMMENDED,** that Defendant Jerry Streeter's Motion to Suppress Evidence and Statements (Doc. 583) be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of October, 2021.